DESIGN/BUILD JOINT SECURITY COMPLEX, EIELSON AFB, AK, W911KB-04-C-0008

# *STRAND HUNT CONSTRUCTION, INC.*
# MATERIAL CONTRACT

Project #: **04-007**        Contact: **RANDY KAER & STEVE TALLMAN** Cost Code No: **050-05350-M** Mat Con No: **PP-04007-01**

THIS MATERIAL CONTRACT AGREEMENT ("Agreement"), made this **30TH** day of **MARCH, 2004** by and between **TITAN MANUFACTURING, 115™ EAST 3ᴿᴰ AVENUE, ANCHORAGE, AK 99501** *Phone: (907) 727-2849 Fax: (907) 892-2922* and **SPENARD BUILDING SUPPLY, 4412 LOIS, ANCHORAGE, AK 99517 Phone: (907) 261-9247 Fax (907) 261-9146** hereinafter called the Seller, and STRAND HUNT CONSTRUCTION, INC., 12900 N. E. 180ᵗʰ Street, Suite 220, Bothell, WA 98011-5773, Phone (425) 488-1954, Fax (425) 488-0757 hereinafter called the Contractor, or Design/Builder, WITNESSETH:

Section 1. The Seller agrees to furnish all material set forth in "Section 2" hereof necessary in the construction of the:

PROJECT: **DESIGN/BUILD JOINT SECURITY COMPLEX, EIELSON AFB, AK, W911KB-04-C-0008**

In accordance with the terms and provisions of the Contract between the Owner and the Contractor, dated **FEBRUARY 27, 2004** and the Proposal Documents and Special Conditions, Drawings and Specifications prepared by **US ARMY CORPS OF ENGINEERS** hereinafter called the Government, forming a part of the Contract between the Contractor and the Owner (hereinafter Contract Documents), all of which shall be considered part of this Agreement by reference thereto, and the Seller agrees to be bound to the Contractor by the terms and provisions thereof.

Section 2. It is agreed that the materials to be furnished by the Seller are as follows:

Everything necessary to furnish the **DESIGN/BUILD JOINT SECURITY COMPLEX, EIELSON AFB,** as shown in the proposal documents and drawings and as described by, but not necessarily limited to sections **ALL LIGHT GAUGE TRUSSES FOR THE MANSARD ROOF FOR THE PROJECT – FOB JOBSITE PER YOUR QUOTE** the Specifications. Items listed in Attachments "1","2" & "3" are also part of this Agreement.

All material furnished under this Agreement is to be delivered F.O.B. to **JOBSITE.**

Section 3. The Contractor agrees to pay the Seller for the materials to be furnished, as aforesaid, the lump sum or unit price of

(a) Lump Sum in the amount of **TWO HUNDRED SEVENTEEN THOUSAND Dollars and No One Hundredths**‒‒‒‒‒‒‒ Dollars (**$217,000.00**), or

(b) Unit Price(s) of **NA** as set forth on the Attachment #1. Approximate contract unit price of: **NA and No One Hundredths**‒‒‒‒ ‒‒‒‒‒ Dollars (**$NA**),

subject to additions and deductions for changes as may result from operation of Contractor's contract with Owner as outlined in the following pages.

Material Contractor agrees to be bound by all laws, government regulations, and orders, and all provisions are incorporated by reference and to be bound by Sections 1 through 19 attached hereto. Including Attachment "1", "2" & "3" attached hereto and by this reference incorporated herein.

IN WITNESS WHEREOF, the parties hereto have executed this Contract by their proper officers or other authorized representations.

| STRAND HUNT CONSTRUCTION, INC. | TITAN MANUFACTURING | SPENARD BUILDING SUPPLY |
|---|---|---|
| BY: _[signature]_ | BY: _[signature]_ | BY: _[signature]_ |
| Philip T. A. Deanng, Sr. Project Manager | | 91620 |
| 21467 | | |
| Registration Number | Business License Number | Business License Number |
| 07/10/04 | 7-20-04 | 7-20-04 |
| Date | Date | Date |
| | | 92-0018778 |
| | Federal Tax Identification No. | Federal Tax Identification No. |
| | Assigned to Spenard Building Supply Do not pay Titan. Make checks payable to Spenard Builders Supply | |

**Section 2 Cont.** Partial payments will be made to the Seller each month in an amount equal to 100% of the value of materials delivered to the Jobsite, computed on the basis of the prices set forth above, or the quantity as estimated by the Owner, less the aggregate of previous payments made hereunder, but such partial payments, subject to the following condition precedent, shall not become due to Seller until 10 days after the Contractor receives payment for such materials from the Owner. If the Contractor receives payment from the Owner for less than the full value of materials delivered to the site but not yet incorporated into the work, the amount due to the Seller on account of such materials delivered to the Jobsite shall be proportionately reduced. No partial payment to the Seller shall operate as approval or acceptance of the materials furnished hereunder. Upon complete performance of this Agreement by the Seller and final approval and acceptance of the materials by the Owner, subject to the following condition precedent, the Contractor will make final payment to the Seller of the balance due him under this Agreement within 30 days after full payment for such materials has been received by the Contractor from the Owner. **(SEE ATTACHED)**

**Section 2a.** Seller and Contractor mutually agree to proper and timely closeout of the project, thus earning final payment therefore. Seller agrees to provide documentation and other deliverables typically required for Contractor's operation/maintenance manuals and payment approval by Owner. Such requirements typically include, but are not limited to;

   a. Original Product Warrantees and guarantees in the form specified and executed in the manner required under the Contract Documents.
   b. Model Numbers, Finish Numbers, Serial Numbers and Other Necessary Identifications to Ensure Correct Future Reference & Replacements.
   c. Complete Assembly and/or Parts Diagrams and Listings.
   d. Ordering Entity, Location and Contact Numbers for Parts, Service or Replacement Materials.
   e. Maintenance Schedules and Product Recommendations.
   f. Maintenance and Repair Instructions.
   g. Supplemental or Maintenance Materials (as/if specified).
   h. Supplemental or Maintenance Parts (as/if specified).
   i. Partial and Final Release of Liens, at all tiers.

Seller agrees to provide the above, as applicable, in six (6) original copies if no more specific amount is required by the Contract Documents and/or Contractor. Seller and Contractor mutually agree a value sufficient to ensure the complete submittal of these items needs to be reserved and earned by said submittal. Unless otherwise modified by Contractor, an amount equal to seven percent of each progress and final invoice will be reserved and released within 10 days of the date the last of these materials is submitted in a form satisfactory to the Owner and Contractor.

**Section 3.** In the event of any breach by the Seller of any part of this Agreement, or in the event of any lien, claim or other liability asserted against the Contractor arising out of the Seller's performance hereunder, which the Seller hereby agrees to defend, save the Contractor harmless from and indemnify the Contractor against, the Contractor shall have the right to retain out of any payments due or to become due to the Seller an amount sufficient to completely protect the Contractor from damage resulting therefrom, until the situation has been completely eliminated or adjusted by the Seller.

**Section 4.** The amount of all additions and reductions to be made to or from the amount of the contract price shall be agreed upon in writing by the parties hereto, such agreement not being valid unless signed by officers or other authorized representatives of the Contractor. In case of disagreement between the parties hereto as to additions or reductions the same shall be determined by the Architect or Engineer by certificate in writing, before any such changes in materials are made, otherwise no allowance therefore shall be made.

**Section 5.** The Seller agrees to furnish the materials called for under this Agreement within the following time or times, to wit:
The Seller agrees to furnish complete submittals not later than: **APRIL 6, 2004.**

The Seller agrees to reimburse the Contractor for any actual and/or liquidated damages that may be assessed against and collected from the Contractor which are attributable to or caused by the Seller's failure to furnish the materials as specified and/or within the time or times as provided above, and in addition thereto, agrees to pay to the Contractor such other or additional damages as the Contractor may sustain by reason of such delay and/or non-performance by the Seller. The payment of such damages shall not release the Seller from his obligation to otherwise fully perform this agreement. Upon written request by the Contractor, the Seller shall furnish to the Contractor such evidence as the Contractor may require relating to the Seller's ability to fully perform this Agreement in the manner and within the time specified herein.

No allowance or extension of time, for any cause whatsoever, shall be claimed by the Seller or be made available to him, unless the Seller shall have made written request upon the Contractor for such extension, within forty-eight hours after the cause for such extension occurred, and the Contractor and Seller have agreed in writing the allowance of additional time. If such extension of time is requested as aforesaid and the Contractor and Seller cannot agree thereupon, shall be determined in accordance with the disputes clause of Section 17.

No allowance or an extension of time shall, in any event, be made to the Seller, for delay by the Seller in preparing his drawings, or in securing approval of the Architect or Engineer thereto when such drawings are not properly prepared for approval of the Architect or Engineer, or when the Seller by the exercise of reasonable diligence or good business judgment could have anticipated and avoided the delay. All drawings of the Seller must be submitted for approval of the Architect or Engineer through the Contractor's office unless otherwise agreed so as to not cause project delays.

**Section 6.** In the event the Seller fails to comply with the provisions herein and the failure is not corrected within five days after written request by the Contractor to the Seller, the Contractor may without prejudice to any other right or remedy, furnish or secure the necessary materials to remedy the situation, at the expense of the Seller.

**Section 7.** The Seller shall provide and maintain Workmen's Compensation and Employees' Liability Insurance for the protection of his employees, as required by the law of the employer. The Seller shall also provide and maintain in full force and effect during the term of this Agreement, insurance (including but not limited to insurance covering the operation of automobiles, trucks and other vehicles) in a company satisfactory to the Contractor, protecting the Seller, the Owner and the Contractor against liability from damages because of injuries, including death, suffered by persons other than employees of the Seller and liability from damages to property, arising from and/or growing out of the Seller's operations in connection with the performance of this Material Contract.

Such insurance covering personal injuries or death shall be in the sum of not less than $2 million for one person and not less than $2 million for a single accident, and the insurance covering damage to property shall be in the sum of $2 million for one accident and $2 million aggregate. Written proof satisfactory to the Contractor of compliance with the requirements of this section shall be furnished upon request before starting delivery of material.

**Section 8.** The Seller further obligates himself to the Contractor in the following respects, to-wit: (1) The Seller shall defend and indemnify the Contractor against and save him harmless from any and all claims, suits or liability for infringement or violation of any patent or patent right, arising in connection with this Agreement and anything done thereunder. (2) The Seller shall defend and indemnify the Contractor against and save him harmless from any and all claims, suits or liability or injuries to property, injuries to persons including death, and from any other claims, suits or liability, on account of any act or omission of the Seller, or any of his officers, agents, employees or servants. (3) The Seller shall pay for all materials furnished and labor performed under this Agreement, and shall satisfy the Contractor thereupon whenever demand is made, and shall defend and indemnify the Contractor and the Owner against and save them and the premises harmless from any and all claims, suits, or liens therefore, by others than the Seller. (4) The Seller, in addition to the obligations set forth in this Agreement, assumes toward the Contractor all the obligations and responsibilities that the Contractor assumes toward the Owner, as set forth in the Contract, General and Special Conditions, Drawings and Specifications hereinabove referred to, insofar as applicable, generally or specifically, to the materials to be furnished under this Agreement.

**Section 9.** The Seller must obtain and apply for all permits, licenses, tests and official inspections necessary to his performance under this Agreement, and shall comply with all laws, ordinances and regulations bearing on the production of his material and the delivery thereof.

**Section 10.** The Seller shall not assign or sublet this contract or any part thereof without the written consent of the Contractor.

**Section 11.** The Contractor assumes no responsibility for any understanding or representations made by any of its officers or agents prior to the execution of this Material Contract, unless such understanding or representation by the Contractor are expressly stated in this Agreement.

**Section 12.** In the event of a conflict between this Agreement and the Contract Documents, this Agreement shall govern unless the Contract Documents require otherwise.

Matcon - Titan - Joint KN

**Ex. A, pg. 2 of 9**

Sub Initials_____    GC Initials _____

**Section 13.** Seller shall designate one or more persons who shall be Seller's authorized representative (a) at the jobsite and (b) off the jobsite. Such authorized representatives shall be the only persons to whom Contractor shall issue instructions, orders or directions except in an emergency.

In the event Seller's authorized representatives fail to meet quality standards, practice unsafe work habits or are otherwise incapable of properly and adequately performing their function, or if they demonstrate an inability to cooperate with the Contractor, Owner, Architect or Engineer, or with other on-site subcontractors, then Seller agrees, within 48 hours after notice, to remove such representative and substitute a competent, cooperative authorized representative.

**Section 14.** Seller recognizes that some of the materials to be incorporated into this project will be furnished by others. It shall nevertheless be the responsibility of Seller to examine the materials so provided and insure that the incorporation of those materials not jeopardize, in any way, the final product and any warranty contemplated by this Agreement thereon.

**Section 15.** Once drawings and other material specifications have been submitted and approved, Seller shall make no substitutions or alterations unless all approvals have been obtained, as required by the Contract Documents, and this Agreement. Seller shall indemnify Contractor for any increased costs incurred by Contractor as a result of such substitutions, whether or not Seller has obtained approval thereof.

**Section 16.** Seller warrants and guarantees the materials covered by this Agreement against all deficiencies and/or defects in materials and/or workmanship as called for in the Contract Documents. Seller agrees to satisfy, at his own expense, such warranty obligations which appear within the guarantee or warranty period established in the Contract Documents without cost to Owner or Contractor. Seller further agrees to execute any special guarantees or warranties that shall be required by the Contract Documents prior to final payment.

**Section 17.** As a condition precedent to the filing of any lawsuit, the parties to this Subcontract shall submit any and all disputes between them to non-binding mediation with the assistance of a recognized professional mediation service or other mutually agreed upon mediator. The parties shall bear equally all expenses, exclusive of attorney's fees, associated with the mediation. At sole discretion of the Contractor, the parties to this Subcontract shall submit any and all disputes between them to arbitration, in lieu of litigation in court, with the assistance of a recognized professional arbitration service or other mutually agreed upon arbitrator.

**Section 18.** Should inconsistencies or omissions appear in the Contract Documents, it shall be the duty of Seller to so notify Contractor in writing within three (3) working days of Seller's discovery thereof. Upon receipt of said notice, Contractor shall instruct Seller as to the measures to be taken, and Seller shall comply with Contractor's instructions.

This Agreement shall be governed by the law of the State of Alaska.

The partial or complete invalidity of any one or more provisions of this Agreement shall not affect the validity or continuing force and effect of any other provision. The failure of either party hereto to insist, in any one or more instances, upon the performance of any of the terms, covenants or conditions of this Agreement, or to exercise any right herein, shall not be construed as a waiver or relinquishment of such term, covenant, condition or right with respect to further performance.

Should either party employ an attorney to institute suit or demand arbitration to enforce any of the provisions hereof, to protect its interest in any matter arising under this Agreement, or to collect damages for the breach of this Agreement or to recover on a surety bond given by a party under this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees, costs, and expenses expended or incurred therein.

This Agreement, including documents incorporated by reference, is solely for the benefit of the signatories hereto and represents the entire and integrated agreement between the parties hereto and supersedes all prior negotiations, representations, or agreements, either written or oral. Contractor and Seller hereby waive any and all claims against each other arising out of any such prior negotiations, representations, or agreements, either written or oral. By affixing their signatures on this Material Contract, Contractor and Seller acknowledge that they have read and are bound by the terms and conditions of all the provisions printed herein and Attachments 1-2.

**Section 19.** The following additional provisions are hereby incorporation in their entirety as part of this Agreement.

Attachment 1:  Part I - Schedule of Drawings, Specifications, Addenda and Alternates and Part II - Specific Inclusions and exclusions, consisting of **2** pages.

Attachment 2:  Construction Schedule Milestones, consisting of **1** pages.

Attachment 3:  Government Flow Down Provisions, consisting of _____ pages.

ATTACHMENT 1

# PART I

### SCHEDULE OF DRAWINGS, SPECIFICATIONS, ADDENDA AND ALTERNATES

1) Drawings, specifications and addenda referred to by section 2 are defined as follows:

   a)   All Proposal Documents, Drawings and specifications, for Design/Build Joint Security Complex, Eielson AFB, AK, W911KB-04-C-0008 and the drawings and specifications listed per Amendment No. 0001, dated December 15, 2003, Amendment No. 0002, dated December 19, 2004, Amendment No. 0003, dated January 8, 2004, Amendment No. 0004, dated January 21, 2004, Amendment No. 0005, dated January 25, 2004, and Attachment 3, Government required flow down clauses.  Current General Decision Wage Rates.

# PART II

### SPECIFIC INCLUSIONS AND EXCLUSIONS

This work is to include, but is not limited to, all items listed on Attachments 1, 2 & 3 to this agreement.  To further clarify the Work, the following items are included in this Agreement (The following requirements do not supersede and/or modify the contract Documents but are intended to further clarify and/or amplify the Contract Documents):

1.  Everything necessary to provide and deliver materials to fully perform all work described in the proposal documents and drawings and in Specification Sections **ALL LIGHT GAUGE TRUSSES FOR THE MANSARD ROOF FORTHE PROJECT.  FOB JOBSITE PER YOUR QUOTE.**

This work is to include:
### General Inclusions:
   a.   General Conditions, Special Conditions, Contract Clauses, and Specifications proposal documents, and drawings, incorporated into this agreement by full text or by reference only, shall have the same force and effect as if incorporated by full text.
   b.   The <u>Buy American Act – Balance of Payments Program – Construction Materials (FAR 52.225-9) (Feb 2000)</u> applies to this contract. <u>NAFTA does apply.</u>
   b.   Review current requirements to obtain access to Eielson AFB, and follow the requirements in a timely manner
   c.   Changes for work considered outside the scope of this contract must be authorized by SHC's Project Manager prior to inception of work or it will not be considered as an extra to this contract.
   d.   Delivery of all material is to occur per the attached schedule and subsequent revisions thereto.  All deliveries must be coordinated thru SHC traffic control supervisor.  Contract general conditions regarding material deliveries requirements are included in this agreement.  Supplier agrees to comply with contract delivery requirements.
   e.   Standby charges are waived.
   f.   Material to be provided FOB jobsite.
   g.   A preconstruction coordination meeting (if required by SHC).  Attendance is mandatory at an agreed to date and location.
   h.   Any submittal requirements must be met within the dates specified in this contract date.  Any closeout requirements that pertain to this contract must be met within four (4) weeks of approved submittals.  <u>Failure to do this will hinder any release of progress/final payments.</u>
   i.   In the performance of your scope of work, notice of any impediment to your progress by other parties must be provided immediately to SHC in writing or it may be considered to fall under the responsibility of your company.
   j.   Monthly progress billings must be received by the 20th day of each month.
   k.   This Material Contract supercedes any and all bid proposals and/or qualifications.
   l.   All materials supplied under this agreement shall comply fully with proposal documents, contract plans, specifications and amendments.
   m.   Upon request, supplier shall provide a complete listing of lower-tier suppliers, items supplied, and points of contact, including telephone numbers and names of representatives, for all organizations providing materials for project.

This work is to include:
### Specific Inclusions:
   a.   All trusses as need for the project including all fill in pieces to make the Mansard roof.
   b.   All clips and fasteners (not hat channel) to tie the whole system together.
   c.   Site visit to make sure we proceed correctly.
   d.   All trusses FOB jobsite, staggered deliveries as needed.
   e.   All stamped engineering shop and erection drawings.
   f.   Design per final Design Alaska drawings including any misc. changes are included in the contract price.
   g.   This is a design build contract and therefore only changes that are received from the Government will be added to your contract.
   h.   Titan can assign the contract but SHC's contract relationship remains with Titan and Randy as our contact person and coordinator for the entire project.
   i.   Titan accepts all risks related to Spenard.

All to provide complete and operational systems.

Matcon - Titan - Joint KN

**DESIGN/BUILD JOINT SECURITY COMPLEX, EIELSON AFB, AK, W911KB-04-C-0008**

To further clarify the Work, the following items are excluded from this Agreement:

**Exclusions:**
a. **Diagram Engineering**
b. **Area above the mechanical room, except any fill in pieces to the material being supplied by the bar & joist supplier.**

**DESIGN/BUILD JOINT SECURITY COMPLEX, EIELSON AFB, AK, W911KB-04-C-0008**

**ATTACHMENT 2**
**CONSTRUCTION SCHEDULE MILESTONES**

The attached Construction Schedule Milestones will change depending upon the actual Notice to Proceed date.

Trusses to start delivery July 1, 2004.

Matcon - Titan - Joint KN

Ex. A, pg. 6 of 9

**DESIGN/BUILD JOINT SECURITY COMPLEX, EIELSON AFB, AK, W911KB-04-C-0008**

# ATTACHMENT #3
## DESIGN/BUILD JOINT SECURITY COMPLEX, EIELSON AFB, AK, W911KB-04-C-0008
## GOVERNMENT CONTRACT CLAUSES

As required by the contract with the Government, the following contract clauses are intended to further clarify and/or amplify the Contract Documents as they relate to your contracted work scope and shall be included in any lower tier subcontracts or purchase orders per the requirements of these clauses:

| | |
|---|---|
| 52.202-0001 | DEFINITIONS (DEC 2001) |
| 52.203.0003 | GRATUITIES (APR 1984) |
| 52.203-0005 | COVENANT AGAINST CONTINGENT FEES (APR 1984) |
| 52.203-0006 | RESTRICTIONS ON SUBCONTRACTOR SALES TO GOVERNMENT (JUL 1995) |
| 52.203-0007 | ANTI-KICKBACK PROCEDURES (JUL 1995) |
| 52.203-0008 | CANCELLATION, RESCISSION, AND RECOVERY OF FUNDS FOR ILLEGAL OR IMPROPER ACTIVITY (JAN 1997) |
| 52.203-0010 | PRICE OR FEE ADJUSTMENT FOR ILLEGAL OR IMPROPER ACTIVITY (JAN 1997) |
| 52.203-12 | LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (JUN 1997) |
| 52.204-0004 | PRINTING/COPYING DOUBLE-SIDED ON RECYCLED PAPER (AUG 2000) |
| 52.209-0006 | PROTECTING THE GOVERNMENT'S INTEREST WHEN SUBCONTRACTING WITH CONTRACTOR DEBARRED, SUSPENDED, OR PROPOSED FOR DEBARMENT (JUL 1995) |
| 52.211-0006 | BRAND NAME OR EQUAL (AUG 1999) |
| 52.211-0012 | LIQUIDATED DAMAGES-CONSTRUCTION (SEPT 2000) |
| 52.211-0013 | TIME EXTENSIONS (SEP 2000) |
| 52.211-0015 | DEFENSE PRIORITY AND ALLOCATION REQUIREMENTS (SEPT 1990) |
| 52.215-0002 | AUDIT AND RECORDS-NEGOTIATION (JUN 1999) |
| 52.215-0010 | PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA (OCT 1997) |
| 52.215-0011 | PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA MODIFICATIONS (OCT 1997) |
| 52.215-0012 | SUBCONTRACTOR COST OR PRICING DATA (OCT 1997) |
| 52.216-0001 | TYPE OF CONTRACT (APR 19840 |
| 52.219-0004 | NOTICE OF PRICE EVALUATION PREFERENCE FOR HUBZONE SMALL BUSINESS CONCERNS (JAN 1999) |
| 52.219-0008 | UTILIZATION OF SMALL BUSINESS CONCERNS (OCT 2000) |
| 52.219-0009 | SMALL BUSINESS SUBCONTRACTOR PLAN (OCT 2000) |
| 52.219-0016 | LIQUIDATED DAMAGES-SUBCONTRACTING PLAN (JAN 1999) |
| 52.222-0001 | NOTICE TO THE GOVERNMENT OF LABOR DISPUTES (FEB 1997) |
| 52.222-0003 | CONVICT LABOR (AUG 1996) |
| 52.222-0004 | CONTRACT WORK HOURS AND SAFETY STANDARDS ACT-OVERTIME COMPENSATION (SEPT 2000) |
| 52.222-0006 | DAVIS-BACON ACT (FEB 1995) |
| 52.222-0007 | WITHHOLDING OF FUNDS (FEB 1988) |
| 52.222-0008 | PAYROLLS AND BASIC RECORDS (FEB 1988) |
| 52.222-0009 | APPRENTICES AND TRAINEES (FEB 1988) |
| 52.222-0010 | COMPLIANCE WITH COPELAND ACT REQUIREMENTS (FEB 1988) |
| 52.222-0011 | SUBCONTRACTS (LABOR STANDARDS) (FEB 1988) |
| 52.222-0012 | CONTRACT TERMINATION-DEBARMENT (FEB 1988) |
| 52.222-0013 | COMPLIANCE WITH DAVIS-BACON AND RELATED ACT REGULATIONS (FEB 1988) |
| 52.222-0014 | DISPUTES CONCERNING LABOR STANDARDS (FEB 1988) |
| 52.222-0015 | CERTIFICATION OF ELIGIBILITY (FEB 1988) |
| 52.222-0021 | PROHIBITION OF SEGREGATED FACILITIES (FEB 1999) |
| 52.222-0023 | NOTICE OF REQUIREMENT FOR AFFIRMATIVE ACTION TO ENSURE EQUAL EMPLOYMENT OPPORTUNITY FOR CONSTRUCTION (FEB 1999) |
| 52.222-0026 | EQUAL OPPORTUNITY (APR 2002) |
| 52.222-0027 | AFFIRMATIVE ACTION COMPLIANCE REQUIREMENTS FOR CONSTRUCTION (FEB 1999) |
| 52.222-0035 | EQUAL OPPORTUNITY FOR SPECIAL DISABLED VETERANS, VETERANS OF THE VIETNAM ERA AND OTHER ELIGIBLE VETERANS (APR 1998) |
| 52.222-0036 | AFFIRMATIVE ACTION FOR WORKERS WITH DISABILITIES (JUNE 1998) |
| 52.222-0037 | EMPLOYMENT REPORTS ON DISABLED VETERANS, VETERANS OF THE VIETNAM ERA, AND OTHER ELIGIBLE VETERANS (DEC 2001) |

Matcon - Titan - Joint KN

Sub Initials_____   GC Initials _____

**DESIGN/BUILD JOINT SECURITY COMPLEX, EIELSON AFB, AK, W911KB-04-C-0008**

| | |
|---|---|
| 52.222-0038 | COMPLIANCE WITH VETERANS' EMPLOYMENT REPORTING REQUIREMENTS (DEC 2001) |
| 52.223-0003 | HAZARDOUS MATERIAL IDENTIFICATION AND MATERIAL SAFETY DATA (JAN 1997) |
| 52.223-0005 | POLLUTION PREVENTION AND RIGHT-TO KNOW INFORMATION (APR 1998) |
| 52.223-0006 | DRUG-FREE WORKPLACE (MAY 2001) |
| 52.223-0014 | TOXIC CHEMICAL RELEASE REPORTING (OCT 2000) |
| 52.225-0011 | BUY AMERICAN ACT-CONSTRUCTION MATERIALS UNDER TRADE AGREEMENTS (MAY 2002) |
| 52.225-0012 | NOTICE OF BUY AMERICAN ACT REQUIREMENT-CONSTRUCTION MATERIALS (MAY 2002) |
| 52.225-13 | RESTRICTIONS ON CERTAIN FOREIGN PURCHASES (JUL 2000) |
| 52.227-0001 | AUTHORIZATION AND CONSENT (JUL 1995) |
| 52.227-0002 | NOTICE AND ASSISTANCE REGARDING PATENT AND COPYRIGHT INFRINGEMENT (AUG 1996) |
| 52.227-0004 | PATENT INDEMNITY-CONSTRUCTION CONTRACTS (APR 1984) |
| 52.227-0023 | RIGHTS TO PROPOSAL DATA (TECHNICAL) (JUN 1987) |
| 52.228-0001 | BID GUARANTEE (SEPT 1996) |
| 52.228-0002 | ADDITIONAL BOND SECURITY (OCT 1997) |
| 52.228-0011 | PLEDGES OF ASSETS (FEB 1992) |
| 52.228-0012 | PROSPECTIVE SUBCONTRACTOR REQUEST FOR BONDS (OCT 1985) |
| 52.228-0014 | IRREVOCABLE LETTER OF CREDIT (DEC 1999) |
| 52.228-0015 | PERFORMANCE AND PAYMENT BONDS-CONSTRUCTION CONTRACTS (MAY 1997) |
| 52.229-0003 | FEDERAL, STATE, AND LOCAL TAXES (JAN 1991) |
| 52.232-5000 | EQUIPMENT OWNERSHIP AND OPERATING EXPENSE SCHEDULE (MAR 1995) |
| 52.229-0005 | PAYMENTS UNDER FIXED-PRICE CONSTRUCTION CONTRACTS (MAY 1997) |
| 52.232-0017 | INTEREST (JUNE 1996) |
| 52.232-0018 | AVAILABILITY OF FUNDS |
| 52.232-0023 | ASSIGNMENT OF CLAIMS (JAN 1986) |
| 52.232-0027 | PROMPT PAYMENT FOR CONSTRUCTION CONTRACTS (FEB 2002) |
| 52.232-0033 | PAYMENT BY ELECTRONIC FUNDS TRANSFER-CENTRAL CONTRACTOR REGISTRATION (MAY 1999) |
| 52.232-0035 | DESIGNATION OF OFFICE FOR GOVERNMENT RECEIPT OF ELECTRONIC FUNDS TRANSFER INFORMATION (MAY 1999) |
| 52.233-0001 | DISPUTES (DEC 1998) |
| 52.233-0003 | PROTEST AFTER AWARD (AUG 1996) |
| 52.236-0001 | PERFORMANCE OF WORK BY THE CONTRACTOR (APR 1984) |
| 52.236-0002 | DIFFERING SITE CONDITIONS (APR 1984) |
| 52.236-0003 | SITE INVESTIGATION AND CONDITIONS AFFECTING THE WORK (APR 1984) |
| 52.236-0005 | MATERIAL AND WORKMANSHIP (APR 1984) |
| 52.236-0006 | SUPERINTENDENCE BY THE CONTRACTOR (APR 1984) |
| 52.236-0007 | PERMIT AND RESPONSIBILITIES (NOV 1991) |
| 52.236-0008 | OTHER CONTRACTS (APR 1984) |
| 52.236-0009 | PROTECTION OF EXISTING VEGETATION, STRUCTURES, EQUIPMENT, UTILITIES, AND IMPROVEMENTS (APR 1984) |
| 52.236-0010 | OPERATIONS AND STORAGE AREAS (APR 1984) |
| 52.236-0011 | USE AND POSSESSION PRIOR TO COMPLETION (APR 1984) |
| 52.236-0012 | CLEANING UP (APR 1984) |
| 52.236-0013 | ACCIDENT PREVENTION (NOV 1991) |
| 52.236-0014 | AVAILABILITY AND USE OF UTILITY SERVICES (APR 1984) |
| 52.236-0015 | SCHEDULES FOR CONSTRUCTION CONTRACTS (APR 1984) |
| 52.236-0016 | QUANTITY SURVEYS (APR 1984) |
| 52.236-0017 | LAYOUT OF WORK (APR 1984) |
| 52.236-0021 | SPECIFICATIONS AND DRAWINGS FOR CONSTRUCTION (FEB 1997) |
| 52.236-0022 | DESIGN WITHIN FUNDING LIMITATIONS (APR 1984) |
| 52.236-0023 | RESPONSIBILITY OF THE ARCHITECT-ENGINEER CONTRACTOR (APR 1984) |
| 52.236-0025 | REQUIREMENTS FOR REGISTRATION OF DESIGNERS (APR 1984) |
| 52.236-0026 | PRECONSTRUCTION CONFERENCE (FEB 1995) |
| 52.242-0013 | BANKRUPTCY (JUL 1995) |
| 52.242-0014 | SUSPENSION OF WORK (APR 1984) |
| 52.243-0004 | CHANGES (AUG 1987) |
| 52.244-0006 | SUBCONTRACTS FOR COMMERCIAL ITEMS (MAY 2002) |
| 52.245-0002 | GOVERNMENT PROPERTY (FIXED-PRICE CONTRACTS) (DEC 1989) |
| 52.246-0012 | INSPECTION OF CONSTRUCTION (AUG 1996) |
| 52.246-0021 | WARRANTY OF CONSTRUCTION (MAR 1994) |
| 52.248-0003 | VALUE ENGINEERING-CONSTRUCTION (FEB 2000) |

**DESIGN/BUILD JOINT SECURITY COMPLEX, EIELSON AFB, AK, W911KB-04-C-0008**

| | |
|---|---|
| 52.249-0002 | TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (SEPT 1996) ALTERNATE III (SEPT 1996) |
| 52.249-0010 | DEFAULT (FIXED-PRICE CONSTRUCTION) |
| 52.253-0001 | COMPUTER GENERATED FORMS (JAN 1991) |
| 252.201-7000 | CONTRACTING OFFICER'S REPRESENTATIVE (DEC 1991) |
| 252.203-7001 | PROHIBITION ON PERSONS CONVICTED OF FRAUD OR OTHER DEFENSE CONTRACT-RELATED FELONIES (MAR 1999) |
| 252.203-7002 | DISPLAY OF DOD HOTLINE POSTER (DEC 1991) |
| 252.204-7000 | DISCLOSURE OF INFORMATION (DEC 1991) |
| 252.204-7003 | CONTROL OF GOVERNMENT PERSONNEL WORK PRODUCT (APR 1992) |
| 252.209-7000 | ACQUISITION FROM SUBCONTRACTORS SUBJECT TO ONSITE INSPECTION UNDER THE INTERMEDIATE-RANGE NUCLEAR FORCES (INF) TREATY (NOV 1995) |
| 252.219-7004 | SUBCONTRACTING WITH FIRMS THAT ARE OWNED OR CONTROLLED BY THE GOVERNMENT OF A TERRORIST COUNTRY (MAR 1998) |
| 252.222-7000 | RESTRICTION ON EMPLOYMENT OF PERSONNEL (MAR 2000) |
| 252.223-7001 | HAZARD WARNING LABELS (DEC 1991) |
| 252.223-7006 | PROHIBITION ON STORAGE AND DISPOSAL OF TOXIC AND HAZARDOUS MATERIALS (APR 1993) |
| 252.226-7001 | UTILIZATION OF INDIAN ORGANIZATIONS AND INDIAN-OWNED ECONOMIC ENTERPRISES-DOD CONTRACTS (SEPT 2001) |
| 252.227-7022 | GOVERNMENT RIGHTS (UNLIMITED) (MAR 1979) |
| 252.227-7023 | DRAWINGS AND OTHER DATA TO BECOME PROPERTY OF GOVERNMENT |
| 252.227-7024 | NOTICE AND APPROVAL OF RESTRICTED DESIGNS (APR 1984) |
| 252.227-7033 | RIGHTS IN SHOP DRAWINGS (APR 19660 |
| 252.231-7000 | SUPPLEMENTAL COST PRINCIPLES (DEC 1991) |
| 252.236-7000 | MODIFICATION PROPOSALS-PRICE BREAKDOWN (DEC 1991) |
| 252.236-7001 | CONTRACT DRAWINGS, MAPS AND SPECIFICATIONS (AUG 2000) |
| 252.236-7008 | CONTRACT PRICES-BIDDING SCHEDULES (DEC 1991) |
| 252.243-7001 | PRICING OF CONTRACT MODIFICATIONS (DEC 1991) |
| 252.243-7002 | REQUESTS FOR EQUITABLE ADJUSTMENT (MAR 1998) |
| 252.247-7023 | TRANSPORTATION OF SUPPLIES BY SEA (MAR 2000) |
| 252.247-7024 | NOTIFICATION OF TRANSPORTATION OF SUPPLIES BY SEA (MAR 2000) |